IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHELLE SHAW,                    )
                                  )
        Plaintiff,                )
                                  )
    v.                            )    1:18-CV-00049
                                  )
NORTH CAROLINA DEPARTMENT OF      )
PUBLIC SAFETY,                    )
                                  )
        Defendant.                )

## MEMORANDUM ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This case is before the court on the motion for summary judgment by Defendant North Carolina Department of Public Safety ("DPS"). (Doc. 18.) Plaintiff Michelle Shaw opposes the motion. (Docs. 21, 22.) Having been fully briefed (Docs. 19, 22, 24), the motion is ready for decision.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Basnight v. Diamond Developers, Inc., 146 F. Supp. 2d 754, 760 (M.D.N.C. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In determining a motion for summary judgment, the court views the "evidence in the light most favorable to the non-moving party, according that party the

benefit of all reasonable inferences." Id. Summary judgment should be denied "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." Guessford v. Pa. Nat'l Mut. Cas. Ins. Co., 983 F. Supp. 2d 652, 659 (M.D.N.C. 2013) (quoting Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994)).

DPS's first ground for summary judgment is that Shaw's claims, which allege violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Family Medical Leave Act, 29 U.S.C. § 2601 et seq., predate and are barred by a valid June 8, 2016 settlement agreement with DPS resulting from DPS's internal grievance process. (Doc. 19 at 9.) Shaw acknowledges having executed the settlement agreement, in which she agreed (among other things) to terminate her employment with DPS on June 30, 2016, and which contained the following language:

> I have read, understand, and agree that the above terms of agreement are an accurate account of the areas of agreement reached in the mediation process and that all matters in the dispute between the grievant and the agency have been settled with the terms of this agreement.
>
> I understand and agree that by signing this Memorandum of Agreement, I release the Respondent, the applicable Agency, Commission and/or Division, and the State of North Carolina from any and all claims that I may have related to my employment and the alleged action(s) that led to this grievance. I further agree and understand that no further grievance, complaint, legal action or remedy can be pursued against the Respondent, the

2

> applicable Agency, Commission and/or Division, or the State of North Carolina related to my employment or the action(s) that led to this grievance.

(Doc. 19-6 at 36.)

DPS's motion for summary judgment is based on the same underlying facts and settlement agreement that was at issue in Shaw's companion case against DPS for alleged Title VII violations which she filed in this court, bearing case number 1:17-CV-00699. That motion was heard in open court on March 20, 2019, and was granted because the court concluded that Shaw's settlement agreement resolving her grievance barred her Title VII claims based on alleged conduct predating the agreement. (See Doc. 47 in case 1:17-CV-00699.) For the same reasons stated at length from the bench at the March 20, 2019 motion hearing in case 1:17-CV-00699, the court finds that Shaw's settlement agreement with DPS also bars her claims in the present case, all of which predated the settlement agreement and fall within its plain release terms.

While employees cannot prospectively waive their statutory rights, Alexander v. Gardner-Denver Co., 415 U.S. 36, 51 (1974) (Title VII), they may release an ADA or FMLA cause of action where there is a knowing and intelligent waiver of their right to bring such a claim. O.V. v. Durham Pub. Sch. Bd. of Educ., No. 1:17-CV-691, 2018 WL 2725467, at *20 (M.D.N.C. June 6, 2018) (citing Shirey ex rel. Kyger v. City of Alexandria Sch. Bd., No. 99-1127, 229 F.3d 1143 (4th Cir. 2000) (unpublished table decision))

3

(holding that a settlement agreement can bar an ADA claim where the release contains a knowing and intelligent waiver of the plaintiff's right to bring such a claim), report and recommendation adopted, No. 1:17-CV-691, 2018 WL 3370644 (M.D.N.C. July 10, 2018); 29 C.F.R. § 825.220(d) (permitting waiver and release of FMLA claims based on past employer conduct); Whiting v. Johns Hopkins Hosp., 680 F. Supp. 2d 750, 754–56 (D. Md. Jan. 6, 2010) (holding that an employee can waive her right to bring an FMLA claim based on conduct which predates the signing of a valid settlement agreement where the employee knowingly and voluntarily enters the agreement), aff'd, 416 F. App'x 312 (4th Cir. 2011) (same); Coyne v. Omnicare, Inc., No. CCB-14-1225, 2014 WL 4384629, at *3–4 (D. Md. Sept. 3, 2014) ("The FMLA does not prohibit the waiver of claims based on past conduct."). In O'Shea v. Commercial Credit Corp., 930 F.2d 358, 361–62 (4th Cir. 1991), the Fourth Circuit looked to relevant state law for determining the validity of a release, declining to adopt a federal common law rule based on the totality of the circumstances. The Fourth Circuit has since recognized that while the "precise ruling in O'Shea has of course been superseded by the limitations on waivers of ADEA rights that Congress created in the Older Workers Benefit Protection Act," for non-ADEA claims, "courts can resolve interstitial questions of federal law either by formulating a federal common law rule or by adopting existing state law, and that they must choose between

4

these two courses on a statute-by-statute, issue-by-issue basis." Kendall v. City of Chesapeake, 174 F.3d 437, 441 n.1 (4th Cir. 1999).[1]

When evaluating whether a waiver of ADA claims is knowing and voluntary, district courts in the Fourth Circuit have applied both standards, with some citing to O'Shea and Kendall and looking to state law, and others citing to Cassiday v. Greenhorne & O'Mara, Inc., 63 F. App'x 169 (4th Cir. 2003), an unpublished Fourth Circuit opinion in which the court approved the district court's determination of a knowing and voluntary waiver of rights under Title VII based on the totality of the circumstances. Compare Davis v. Old Dominion Tobacco Co., Inc., 755 F. Supp. 2d 682, 692 (E.D. Va. 2010) (citing Kendall, 174 F.3d at 441 n.1, applying "ordinary contract principles," and looking to state law to determine whether the release of the plaintiff's ADA claims was knowing and voluntary); Eddie v. Auto Truck Transp. Corp., No. 7:06-CV-00750, 2007 WL 1874225, at *3 (W.D. Va. June 27, 2007) (citing O'Shea, 930 F.3d at 362, when stating that "[t]o determine whether such a waiver [of an employee's right to sue for ADA

---

[1] More recently, one Fourth Circuit judge has recognized in an unpublished decision that, in the Title VII context, "circuits diverge on what an assessment of voluntariness and knowledge entails: some look solely to principles of contract interpretation, while other evaluate the totality of the circumstances surrounding a purported release. . . . [T]he Fourth Circuit lacks binding precedent on which approach governs releases of Title VII claims." Bala v. Va. Dept. of Conservation and Recreation, 614 F. App'x 636, 641 (4th Cir. 2015) (Floyd, J., dissenting).

5

discrimination] is binding, the court will look to the state law of contracts"); and Lewis v. Extended Stay Am., Inc., 454 F. Supp.2d 453, 457 (M.D.N.C. 2006) ("A knowing and voluntary waiver will preclude a party from suing under federal discrimination laws, including the ADA . . . . Under the ADA . . . , courts within the Fourth Circuit apply ordinary contract principles to determine the validity of a release." (citing O'Shea, 930 F.3d at 362; Adder v. Holman & Moody, Inc., 288 N.C. 484, 491–92 (1975))), with Smith v. Montgomery Cty., No. 8:17-cv-03122, 2019 WL 1130156, at *7 (D. Md. Mar. 12, 2019) (stating that the totality of the circumstances standard articulated in Cassiday, 63 F. App'x 169, applies to ADA cases and applying the standard to find that the plaintiff's agreement to waive his ADA rights was knowing and voluntary).

In the FMLA context, courts have similarly applied different standards to determine whether an employee's waiver of FMLA claims was knowing and voluntary. Compare Cruthirds v. Lacey, No. 5:14-CV-00260, 2017 WL 3754764, at *4 (E.D.N.C. Aug. 30, 2017) (citing Cassiday v. Greenhorne & O'Mara, Inc., 220 F. Supp. 2d 488, 493 (D. Md. Aug. 6, 2002), and applying the totality of the circumstances standard to find that the plaintiff knowingly and voluntarily entered into a settlement agreement resolving her FMLA claims), with Coyne, 2014 WL 4384629, at *3–4 & n.6 (finding, without specifying which standard applied, that the plaintiff's execution of an agreement and release "unequivocally covered" his

6

FMLA and state law flexible leave claims because "the terms of the Agreement were unmistakably clear").

Under either the state law of contracts approach or the totality of the circumstances test, the clarity of a purported waiver is significant. "Settlement agreements operate on contract principles, and thus the preclusive effect of a settlement agreement should be measured by the intent of the parties. Where the parties' intent is clear from the unambiguous terms of the contract, construed as a whole, [courts] need not and cannot resort to extrinsic evidence of intent." Bala v. Va. Dept. of Conservation and Recreation, 614 F. App'x 636, 639 (4th Cir. 2015) (internal quotation marks and citations omitted) (Title VII);[2] see Coyne, 2014 WL 4384629, at *4 (finding that where the terms of the agreement were "unmistakably clear," the agreement barred the plaintiff's FMLA and state law claims).

Here, the plain language of Shaw's June 8, 2016 settlement agreement with DPS unambiguously indicates that she agreed to release any and all claims she had at that time relating not only to her grievance but to her employment at DPS as well. This squares reasonably with Shaw's agreement to cease her employment with DPS as part of the settlement. (Doc. 19-7 at 16.) Cynthia

---

[2] Unpublished opinions of the Fourth Circuit are not precedential but are accorded the weight their persuasive reasoning suggests, especially in this area of law where few reported cases exist. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

7

Thornton, a DPS Correctional Superintendent who was the respondent at the June 8, 2016 settlement meeting and a signatory to the settlement agreement, states in her affidavit, and Shaw does not dispute, that Shaw was given the opportunity to have counsel during her consideration of the document, but she declined to do so. (Doc. 19-6 at 4.)  She also acknowledged she understood the settlement agreement and was not coerced into signing it.  (Id. at 36; Doc. 19-7 at 15–16.)  DPS was entitled to rely on her representation, and the agreement and waiver, which were entered into knowingly and voluntarily, should therefore be given effect. See Coyne, 2014 WL 4384629, at *4 n.6 (finding that although the agreement at issue did not explicitly list the Maryland Flexible Leave Act of 2008 as one of the laws for which claims would be released, the language in the agreement covering "any other federal, state or local law, rule, regulation or ordinance" was sufficient to clearly bar such claim); Singletary v. Enersys, Inc., 57 F. App'x 161, 164 (4th Cir. 2003) (determining collective bargaining agreement provision covering "[a]ny and all claims . . . under any federal or state employment law" to be "clear and unmistakable," and while "indeed quite broad, it could not be more clear.")

Having found that Shaw's claims in this case are barred by her settlement agreement with DPS, the court need not consider DPS's remaining arguments for summary judgment.

For these reasons, therefore,

IT IS ORDERED that Defendant's motion for summary judgment is GRANTED as to all Plaintiff's claims and that this action is DISMISSED WITH PREJUDICE.

<pre>
                                    /s/   Thomas D. Schroeder
                                  United States District Judge
</pre>

April 10, 2019